IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JAMES O. HORNSBY )
and PAMELA S. HORNSBY, )
)
      Plaintiffs, )  TC-MD 110357
)
    v. )
)
LANE COUNTY ASSESSOR, )
)
      Defendant. )  **DECISION**

      Plaintiffs appealed the real market value of property identified as Account 1678315

(subject property) for the 2010-11 tax year. A trial was held by telephone on August 22, 2011.

David E. Carmichael (Carmichael), Attorney at Law, appeared on behalf of Plaintiffs. James

Hornsby (Hornsby) testified on behalf of Plaintiffs. Bryce Krehbiel (Krehbiel), Residential

Appraiser, appeared and testified on behalf of Defendant.

      Plaintiffs' Exhibit 1 and Rebuttal Exhibit 1 were offered and received without objection.

Defendant's Exhibits A through T were offered and received without objection. Defendant

offered Rebuttal Exhibits A and B. Plaintiffs objected to Defendant's Rebuttal Exhibits A and B

because they were not timely exchanged in accordance with Tax Court Rule-Magistrate Division

10 C and do not serve to rebut any evidence presented. Defendant's Rebuttal Exhibit A is

identical to Defendant's Exhibit S ("Analysis of comparable sales"), with the exception that it

includes a list of the finished square feet of each comparable sale. The court excluded Rebuttal

Exhibit A based on Plaintiffs' objection; it does not rebut any evidence presented by Plaintiffs.

Furthermore, the information contained in Defendant's Rebuttal Exhibit A is contained

elsewhere in Defendant's Exhibits that were timely exchanged. Defendant's Rebuttal Exhibit B,

a statement of Krehbiel's prior experience and qualifications, was allowed over Plaintiffs'

objection. Plaintiffs questioned Krehbiel's appraisal judgment and experience; Defendant's Rebuttal Exhibit B was offered to rebut those arguments.

## I. STATEMENT OF FACTS

Hornsby testified that Plaintiffs purchased the subject property in January 2005, for about $485,000. Hornsby testified that the 2005-06 real market value of the subject property was $623,497, which was approximately $138,000 more than their purchase price; Plaintiffs did not appeal the 2005-06 value. (*See* Ptfs' Ex 1 at 2.) He testified that, around February 2010, Plaintiffs decided to sell the subject property and listed it with a realtor, Dennis Green (Green), for $549,000. Hornsby testified that the board of property tax appeals (BOPTA) reduced the 2010-11 real market value to $549,000 based on that initial listing price.

Hornsby testified that, at first, he thought the $549,000 listing price was a little low given the real market value on the roll. He testified that Green told Plaintiffs that it was a good starting point, but noted that the subject property would probably not sell at that price. Hornsby testified that Green did the best job he could marketing the subject property; Green ran regular advertisements and held several open houses. Hornsby testified that Plaintiffs received no offers to purchase the subject property until the offer that resulted in the sale that closed in April 2011, for $455,000. (*See* Ptfs' Ex 1 at 4, 5; Def's Ex G.) He testified that, subsequent to the initial listing in February 2010, Plaintiffs reduced the listing price to $519,000 in July 2010, to $497,900 in October 2010, and to $479,000 in January 2011. (Ptfs' Ex 1 at 4.) Hornsby testified that all of the 2010 listing prices for the subject property were too high for the market.

Hornsby testified that Plaintiffs had an appraisal of the subject property completed that concluded a value of $475,000 as of February 16, 2011. (Ptfs' Ex 1 at 20-44.) Hornsby testified that he considered $475,000 a reasonable value for the subject property. He testified that

comparable sale #1 relied upon by his appraiser, 3832 Meadow View, is a home previously occupied by Plaintiffs. (*Id.* at 21.) Hornsby testified that sale #1 is a good comparable for the subject property, although it is larger; it sold for $475,000 on December 2, 2010. (*Id.*) Hornsby testified that, of the comparable sales presented by Carmichael at the BOPTA hearing, the sale of property located at 3615 Waterbook Way, Eugene, Oregon, for $475,000 on December 24, 2009, is the best comparable sale for the subject property. (*Id.* at 45.)

Krehbiel testified that the subject property includes 2,947 square feet of finished area and is a quality class 6. (Def's Ex A at 2.) He testified that the subject property neighborhood is River Pointe, code 20710, an "A" quality neighborhood. (*Id.* at 1.) Krehbiel testified that the subject property is located close to a golf course. (*See* Def's Ex E (aerial photo and tax lot map)). Krehbiel provided the Proval record for the subject property, noting the history of transfers listed back to the earliest in 2001. (Def's Ex A at 1.)

Krehbiel identified nine comparable sales of quality class "5" to "6+" properties that occurred between October 2009, and May 2011. (Def's Ex J through R; *see* Def's Ex S (summary table of sales)). He testified that, like the subject property, all of the comparable sales are in "A" quality neighborhoods except the sale of "3359 Wilmington Ct," which is located in a "B" quality neighborhood. (Def's Ex N.) Krehbiel calculated a time trended value for each sale and a price per square foot for each sale, based on the time-trended value. (Def's Ex S.) The time trended sales prices of Krehbiel's comparable sales range from $515,328 to $561,627, with prices per square foot ranging from $159 to $206. (*Id.*) Krehbiel noted that the average price per square foot was $184 for all of his comparable sales and $183 for class 6 properties. (*Id.*) He calculated a time trended sale price of $488,488, or $165 per square foot, for the subject

/ / /

property. (*Id.*) Krehbiel testified that the prices per square foot of only two of the nine comparable sales (Exhibits M and Q) are less than the time trended price of the subject property. (*See* Def's Ex S.)

Krehbiel testified that he selected sales of class 6 properties in "A" quality neighborhoods because he determined those factors to be the most indicative of comparability. Krehbiel testified that he has not viewed the interior of the subject property, nor has he driven by the subject property. He testified that he has not physically inspected any of the comparable sales that he identified. Krehbiel provided a map showing the proximity of the comparable sales to the subject property. (Def's Ex T.) He testified that location can explain differences in value, but it depends on the neighborhoods. Krehbiel testified that his comparable sales are farther from the subject property than those presented by Carmichael to BOPTA, but noted that Carmichael's sales are all of class 5, not class 6, properties. (*See* Ptfs' Ex 1 at 45; Def's Ex S, T.)

The 2010-11 real market value of the subject property found by BOPTA is $549,000. (Ptf's Compl at 2.) The 2010-11 maximum assessed value of the subject property is $480,625. (*Id.*) Plaintiffs allege that the 2010-11 real market value of the subject property is no more than $488,488, the sale price of the subject property time trended to January 1, 2010. Krehbiel testified that he considers the February 2010, listing to be the best evidence of value. Defendant requests that the 2010-11 real market value of the subject property be sustained. Krehbiel testified that the subject property is already in compression so any reduction in value would result in tax savings. (*See* Def's Ex C.)

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2010-11 tax year. "Real market value is the standard used throughout the ad valorem statutes except for

special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D,

WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)).

Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash
> that could reasonably be expected to be paid by an informed buyer to an informed
> seller, each acting without compulsion in an arm's-length transaction occurring as
> of the assessment date for the tax year."[1]

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in

accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three

approaches of value that must be considered are: (1) the sales comparison approach; (2) the cost

approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three

approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

The approach of valuation to be used is a question of fact to be determined on the record.

*Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

The lack of an appraisal is not fatal because "[t]he various approaches to valuation * * *

are only vehicles used to determine the ultimate fact--market value." *Kem v. Dept. of Rev.*

(*Kem*), 267 Or 111, 114, 514 P2d 1335 (1973). "A recent sale of the property in question is

important in determining its market value." *Id*. "If the sale is a recent, voluntary, arm's length

transaction between a buyer and seller, both of whom are knowledgeable and willing, then the

sale price, while certainly not conclusive, is very persuasive of the market value." *Id*.

Plaintiffs have the burden of proof and must establish their case by a preponderance of

the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of

---

[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof[.]" *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiffs request that the 2010-11 real market value of the subject property be reduced to $488,488, which is the time trended sale price of the subject property calculated by Defendant. Defendant requests that the court sustain the real market value of $549,000 determined by BOPTA, which is based on Plaintiffs' listing price for the subject property in February 2010. Both values are within the range of time trended comparable sales prices identified by Krehbiel. As stated in *Kem*, the "recent, voluntary, arm's length" sale of the subject property is important to determining its real market value. *Kem*, 267 Or at 114. The sale of the subject property was not "recent" with respect to the January 1, 2010, assessment date, but has been time trended to January 1, 2010.

Listings, although relevant to the question of value, are generally recognized as the upper limit for most completed sale transactions. The court finds that, in this case, the actual sale of the subject property, albeit over a year after the assessment date, is better evidence of value than the listing price. Hornsby testified that Plaintiffs received no offers to purchase the subject property prior to the sale in 2011, and reduced the listing price several times during 2010. There is no evidence to suggest that the sale of the subject property was not a "voluntary, arm's length" transaction. Furthermore, the subject property's time trended sale price of $488,488 is within the range of time trended comparable sales prices identified by Defendant. The court finds that the real market value of the subject property as of January 1, 2010, was $488,488.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that the 2010-11 real market value of the subject property was $488,488. Now, therefore,

IT IS THE DECISION OF THIS COURT that the 2010-11 real market value of property identified as Account 1678315 was $488,488.

Dated this ____ day of December 2011.

ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on December 16, 2011. The Court filed and entered this document on December 16, 2011.*